**COLIN M. PAGE & ASSOCIATES**
2001 Route 46, Suite 310
Parsippany, NJ 07054
P: 973-794-6188 | F: 973-201-2209
colin@cmpemploymentlaw.com
Attorneys for Plaintiffs

|  |  |
|---|---|
| KATHERINE WILD and DEBORAH SMITH,<br><br>       Plaintiffs,<br><br>v.<br><br>PEDIATRIC SERVICES OF AMERICA, INC.,<br><br>       Defendant. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action No.<br><br>**COMPLAINT** |

By way of Complaint, plaintiffs Katherine Wild ("Wild" or "Plaintiff") and Deborah Smith ("Smith" or "Plaintiff"), by and through their attorneys say:

## **PARTIES**

1. Katherine Wild is a resident of the State of New Jersey residing at 10 Gilbert Drive, Glenwood, New Jersey 07418.

2. Deborah Smith is a resident of the State of New Jersey residing at 1 Main Street, Sparta, New Jersey 07871.

3. Upon information and belief, Defendant, Pediatric Services of America, Inc., ("PSA") is a home service pediatric care provider headquartered in Atlanta, Georgia.

## JURISDICTION AND VENUE

4. Jurisdiction in the District Court is appropriate on the basis that the case presents a federal question under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et seq.

5. Venue is appropriate in the District of New Jersey on the basis that the Plaintiffs reside in New Jersey and Defendant conducts business in New Jersey.

## FACTUAL ALLEGATIONS

6. Plaintiff Wild is sixty two (62) years old.

7. Wild was employed with Defendant's Sparta, New Jersey office for six and one-half (6.5) years and held the title of Administrative Office Coordinator.

8. Plaintiff Smith is sixty three (63) years old.

9. Ms. Smith was employed with Defendant's Sparta, New Jersey office for twenty three (23) years and held the title of Senior Staffing Coordinator.

10. During their employment with PSA, Plaintiffs have always performed well and have consistently received good performance reviews.

11. In or around the fall of 2015, PSA hired a new Regional Manager with responsibility for the offices in New Jersey named Robert Danbury.

12. Upon information and belief, Danbury is in his late thirties or early forties.

13. In late 2015 and early 2016, PSA had a company-wide restructuring.

14. In New Jersey, PSA moved to consolidate the Sparta office with its Hackensack office.

15. On January 8, 2016, Ms. Wild was notified by PSA that her employment was being terminated allegedly due to a position elimination.

16. Younger employees performing similar duties in Sparta office were retained.

17. Upon information and belief, younger employees performing similar functions in the Hackensack office were also retained.

18. In mid-February 2016, Danbury came to the Sparta office and met with Ms. Smith individually.

19. On February 29, 2016, PSA notified Smith that her position was being eliminated and her employment was being terminated.

20. Smith learned from Ashley Stone, a twenty-six (26) year old Location Biller, that Danbury had offered her a position as a Staffing Coordinator.

21. Upon information and belief, Smith's position was not eliminated and she was replaced by Ashley Stone.

22. Upon information and belief, Plaintiffs' ages played a role in PSA's decision to terminate their employment in violation of the NJLAD.

**Severance Agreements**

23. PSA offered Plaintiffs severance agreements in connection with their termination that purported to release their age-discrimination claims under the ADEA.

24. PSA's severance agreements did not comply with the requirements of the Older Worker Benefit Protection Act ("OWBPA").

25. Upon information and belief, Plaintiffs' terminations were part of the company-wide restructuring.

26. Upon information and belief, PSA offered Smith severance in accordance with its "termination program."  Smith was offered the standard severance policy or

practices in the same manner that PSA had offered severance to other employees that were terminated as part of the restructuring.

27. Instead of providing Smith the type of release required by a group layoff, PSA gave Smith a release for a single performance termination.

28. PSA did not give Smith the required forty-five (45) days to consider the release. Instead, it only gave Smith twenty-one (21) days to consider the release.

29. PSA did not give Smith the required disclosure of the ages of the individuals selected for layoff and the ages of the individuals not selected for layoff necessary for her to make an informed decision regarding releasing her ADEA claims.

30. PSA provided Ms. Wild an "age disclosure" which purported to provide the ages of individuals in her decisional unit that were selected and not selected for termination.

31. Upon information and belief, the age disclosure was not accurate and did not comply with the requirements of the OWBPA.

32. Ms. Wild was terminated in January, but the disclosure appeared to relate to a different layoff as it was titled "Chicago North, Allentown, PA and Sparta, NJ PSA Employees Affected and Not Affected by November 2015 Elimination of Positions."

33. Upon information and belief, the age disclosure that Ms. Wild was given did not accurately reflect her "decisional unit."

34. Upon information and belief, the Chicago North and Allentown Pennsylvania offices are not in the same region as the Sparta office and different PSA managers made the decisions or recommendations regarding which employees to terminate in those offices.

35. Upon information and belief, the decision to terminate Ms. Wild was made as part of a plan to consolidate the Sparta and Hackensack offices and the decision-making related to her termination was solely focused on PSA's New Jersey operations.

36. Upon information and belief, the employees in the Hackensack office were part of the same "decisional unit" as Ms. Wild, but PSA failed to include the ages of the employees in the Hackensack office in the age disclosure.

37. Upon information and belief, at the time that Ms. Wild was terminated, PSA knew or had reason to know that it was also going to eliminate Ms. Smith's position. However, it failed to disclose that Ms. Smith was also going to be included in the layoff.

38. PSA's release violated the OWBPA and accordingly, the purported release of Ms. Wild's ADEA claim is invalid and unenforceable.

## CLAIM ONE – AGE DISCRIMINATION (ADEA)

17. Plaintiff repeats and realleges the allegations set forth above as if set forth at length herein.

18. Upon information and belief, Defendant selected to terminate long-term, older workers in its company-wide restructuring.

19. Defendant terminated Plaintiffs because of their age in violation of the Age Discrimination in Employment Act.

20. Defendant's actions were motivated by actual malice or were the result of a willful and wanton disregard for the harm their actions were causing Plaintiffs.

21. Defendant caused Plaintiffs to suffer economic and emotional harm.

**WHEREFORE**, Plaintiffs demand judgment against Defendant and seek damages for back pay, reinstatement or front pay, lost benefits, other compensatory damages, emotional distress

damages, punitive damages, statutory penalties, interest, compensation for the negative tax consequences of receiving a damage award in the form of a one-time lump sum, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs Katherine Wild and Deborah Smith demand a trial by jury on all issues.

                              COLIN M. PAGE & ASSOCIATES
                              Attorneys for Plaintiffs

                            By:  /s/ Colin M. Page
Dated: February 8, 2017             COLIN M. PAGE